DIAMOND McCARTHY LLP
Christopher D. Sullivan (SBN 148083)
csullivan@diamondmccarthy.com
Roxanne Bahadurji (SBN 290117)
roxanne.bahadurji@diamondmccarthy.com
150 California Street, Suite 2200
San Francisco, California 94111
Tel: 415.692.5200; Fax: 415.263.9200

Proposed Attorneys for Prithvi Investments, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| In re: | CASE NO.: 22-30259 |
|---|---|
| PRITHVI INVESTMENTS, LLC, A California Limited Liability Company | Chapter 11 |
| Debtor in Possession. | Preliminary Hearing:<br>Date: May 27, 2022<br>Time: 11:00 a.m. |
| | Tele/Video Conference |
| | *Please check www.canb.uscourts.gov for information regarding the Court's operations due to the COVID-19 pandemic* |

# OMNIBUS DECLARATION OF HITESH PATEL IN SUPPORT OF FIRST DAY MOTIONS

I, Hitesh Patel, am the President of Prithvi Investments, LLC, a California Limited Liability Company, the Debtor and Debtor in Possession ("Prithvi LLC") in the above-referenced chapter 11 case (the "Case"), which owns and operates a sixty-four room Quality Inn & Suites hotel in Santa Rosa, California (the "Subject Property" or the "Hotel"). I am generally familiar with the operation of the Hotel's operations, its business affairs, and its books and records. I can testify competently to the facts stated herein based on personal knowledge or based on information received from employees or professionals of Prithvi LLC.

# I.

# OVERVIEW OF CHAPTER 11 CASE

1. On May 25, 2022 (the "Petition Date") Prithvi LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

**Background and History of Hotel and Family Business**:

2. Prithvi LLC's principal executive office is located at 458 33rd Ave., San Francisco, CA 94121.

3. Prithvi LLC bought the Hotel on or about July 24, 2018. The Hotel was built in 1999 and renovated by previous owners in 2017. It has good visibility and access on a main thoroughfare in Santa Rosa. The Hotel, in addition to renting the rooms on a per night basis, has a breakfast dining area and a fitness room. The Hotel has sixty-eight parking spaces and operates under a license agreement with Choice Hotels International, Inc.

4. Prithvi LLC is one of eight LLCs (the "Patel Hotel Entities") (the "Patel Hotel Entities") owned by the family of Jashvant and Hansaben Patel that own and operate 14 hotels in California (the "Patel Hotels"). Due to the significant interruption in business by the Covid Pandemic, three of the LLCs, Rudra Investments, LLC ("Rudra LLC"), Hansaben Investments, LLC ("Hansaben LLC) and Prithvi LLC, have been forced to file Chapter 11 to reorganize their debts (the "Patel Chapter 11 Entities").

5. The history of the Patel hotel business begins in 1980 when my parents, Jashvant and Hansaben Patel, leased the hotel owned by Hansaben LLC in Fairfax, California. Over the years, Jashvant and Hansaben Patel added multiple hotels to the family business and formed different entities to own them. My brother, Bhavesh Patel joined the family business in 2007 and I joined in 2012.

6. My brother has a bachelor's degree in Marketing from the University of San Francisco, and I have a bachelor's degree in Finance from CSU East Bay. Before joining the hotel operations, I worked for Salesforce.

7. On October 19, 2019, my father, Jashvant Patel passed away, and my brother Bhavesh and I took over many more responsibilities in the family's hotel operations.

8. I am the President of Prithvi LLC and the Manager of Hansaben LLC and Rudra LLC. I have agreed to become the Designated Responsible Person pursuant to L.B.R. 4002-1 for all the Patel Chapter 11 Entities.

9. In addition to my managerial duties, I directly manage the payroll and organize the monthly and analytical reports of operations for all the Patel Hotel Entities which includes the Patel Chapter 11 Entities. My brother, Bhavesh, performs marketing research and supervises business activities and property management for all the Patel Hotel Entities.

**Cash Flow Management Among Patel Hotel Entities**:

10. Over the past years there have been transfers made between Patel Hotel Entities. Tranfers out of Prithvi LLC and transfers back into Prithvi LLC have been routine over the entire period that I have managed the finances for the Patel Hotel Entities and are the functional equivalent of a working capital line of credit that helps the Patel Hotel Entities manage variable cash flow. For example, while preparing the statement of financial affairs, we have identified transfers out of Prithvi LLC over the past twelve-month period in the amount of $1,028,929 to other Patel Hotel Entities. But, over the same period, Prithvi LLC received transfers from the other Patel Hotel Entities in the amount of $1,834,004.05. The analysis is preliminary and needs to be confirmed.

11. I will have a CPA perform such an accounting and submit it to the Court, if our anticipated application to employ a CPA as a financial advisor is approved.

12. This cash flow management process is a crucial component of the operations of the Hotel. If there is a disruption in cash flow, the other Patel Hotel Entities have historically been the backstop. If the Debtor encounters post- petition cash flow liquidity issues, it is possible that the Debtor in Possession will need transfers from other Patel Hotel Entities that have not filed for Chapter 11. But, I understand that no transfers during the Case will be made by Prithvi LLC to any of the Patel Hotel Entities without Bankruptcy Court approval.

13. To assist the Hotel's cash flow during the Case, Bhavesh and I intend to continue to accrue management fees and not seek to have them paid as part of the payroll or cash collateral motions.

**Employee Priority Claims**

14. The Hotel currently employs 10 employees. The estimated amount owed for next payroll due on June 1, 2022, will be approximately $8,500 for wages and taxes/deductions in total and we estimated that 60% of that amount will be for the prepetition period. We will run a "ghost" payroll through May 24, 2022, and will be able to file a supplement detailing the amount due to each employee prior to the hearing on the First-Day Motions.

15. As described above, neither my brother nor I will be asking for management fees either through payroll or directly as part of the prepetition payroll motion.

**Secured Creditors**

16. Prithvi LLC's main creditor is Poppy Bank. On July 10, 2018, Prithvi LLC entered into two Business Loan Agreements (the "Loan Agreements") with Poppy Bank, one in the original principal amount of $8,065,000 (the "$8.065MM Loan Agreement") and the other in the original principal amount of $2,500,000 (the "2.5MM Loan Agreement"). Pursuant to the Loan Agreements, Poppy Bank made two loans to Prithvi LLC in the original principal amounts of $8,065,000 and $2,500,000, respectively. The loans are evidenced by promissory notes (the "$8.065MM Note" and the "$2.5MM Note").

17. In connection with the Loan Agreements, on July 10, 2018, Prithvi LLC also executed deeds of trust granting Poppy Bank liens on the Hotel, as well as two Commercial Security Agreements (the "Security Agreements") for the benefit of Poppy Bank. In addition to deeds of trust on the Subject Property, Poppy Bank asserts a blanket security interest in Prithvi LLC's personal property including accounts and filed UCC-1 financing statements with the California Secretary of State on July 19, 2018 (Document No 71727340002 and 1727350002) to perfect such interest.

18. On or about July 21, 2021, Poppy Bank recorded a Notice of Default and Election to Sell Under Deed of Trust for the $2.5MM Note. Moreover, on March 8, 2022, Poppy Bank filed a Complaint for Appointment of a Receiver Pursuant to Code of Civil Procedure Section 564(B) and Injunctive Relief in the Superior Court of California, County of Sonoma, SCV-270365. The Complaint alleges that the balance due under the $8.065MM Note is 8,513,916.66 and the balance under the $2.5MM Note is $2,531,453.79.

- 4 -

19. On or about August 27, 2021, Prithvi LLC also obtained a United States Small Business Administration ("SBA") loan in the principal amount of $500,000, which is also secured by an interest in Prithvi LLC's tangible and intangible personal property. The SBA filed a UCC-1 financing statement with the California Secretary of State on September 13, 2021 (Document No U210084382433) to perfect such interest. Installment payments are to begin on or about August 27, 2022 – 12 months from the date of the loan.

20. In November 2018, shortly after purchasing the Hotel, in order to modernize and upgrade the furniture and fixtures in the Hotel, Prithvi obtained a loan from Access Point Financial, Inc. ("Access Point") in the principal sum of $2.1 million. To secure that loan, Prithvi and Access Point entered into an Equipment Loan and Security Agreement. Per the Equipment and Security Agreement, collateral for the loan "consists of any and all furniture, fixtures, and equipment acquire with the proceeds of the Loan[.]" Access Point filed a UCC financing statement on November 30, 2018 (Document No. 18-7685021593).

21. The immediate cause for this Chapter 11 filing is related to Poppy Bank's actions. On or about July 21, 2021, Poppy Bank recorded a Notice of Default and Election to Sell Under Deed of Trust for the $2.5MM Note. Moreover, on March 8, 2022, Poppy Bank filed a Complaint for Appointment of a Receiver Pursuant to Code of Civil Procedure Section 564(B) and Injunctive Relief in the Superior Court of California, County of Sonoma, SCV-270365. The Complaint alleges that the balance due under the $8.065MM Note is 8,513,916.66 and the balance under the $2.5MM Note is $2,531,453.79.

22. The primary business cause of the Chapter 11 filing was the drastic reduction in room revenue over the past several years from the Covid pandemic. For example, the Hotel revenues were $2,162,670 in 2019, then fell to $1,213,211 during the first Covid year 2020, and rose to $1,535,594 in 2021. I anticipate that 2022 will be significantly better as we continue to exit the Covid Pandemic.

23. The Debtor in Possession's goal of this Chapter 11 filing and the two concurrent filings by Rudra LLC and Hansaben LLC is to reorganize the obligations of the hotels that were damaged by the Covid pandemic and to pay all creditors in full with interest over time.

**Unsecured Claims**

24. In addition to the secured debt, there are priority debts owed on account of property taxes and transient occupancy taxes, approximately in the amount of $350,000. There is also approximately $439,875 in general unsecured debt, which includes $78,236 in past due franchise fees, approximately $355,976 of property taxes that fall outside of 11 U.S.C 507(a)(8)(b), and vendor claims.

**Estimated Hotel Value**

25. An appraisal was conducted on May 3, 2018. It concluded that the market value of the Hotel in an as-is condition as of April 2018 was $12 million. Alternatively, it concluded that the prospective market value of the hotel upon completion of planned capital expenditures for replacement of furniture, fixtures and equipment, as of April 17, 2019 was $12.8 million. The Debtor in Possession believes that the current value of the Subject Property has increased due to higher prospective room rates given inflation and the recent post-Covid uptick in travel. I anticipate that 2022 will be significantly better as we continue to exit the Pandemic.

26. In my opinion, the Hotel's current market value is $14 million. In addition to the anticipated room rate and occupancy increases, I also base this valuation on several recent sales of hotels in the vicinity of the Hotel. We have included funds in the cash collateral budget for a new appraisal if necessary.

**Concerns about the Chapter 11 Costs:**

27. I am concerned about the cost of Chapter 11 for all three Patel Chapter 11 Hotel Entities. In an attempt to reduce administrative expense and avoid duplication, we have entered into a common interest agreement between the separate counsel for the Patel Chapter 11 Hotels, and our practice will be to have one hotel's counsel take the lead on drafting the first draft of common pleadings that generally will be equally applicable to the other cases. Of course, the different entities face separate issues, and each lawyer will review the pleadings for accuracy and modify before filing.

**II.**

**FACTS REGARDING EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM AND FINAL USE OF CASH COLLATERAL; GRANTING OF REPLACEMENT LIEN TO POPPY BANK; AND SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

28. Prithvi LLC derives its income from hotel room revenues, which include multiple services in addition to temporary occupancy of a room such as housekeeping services, condiments, and breakfast food and drinks (collectively, the "Hotel Services").

29. I understand that the hotel revenues from the Hotel Services are the cash collateral of Poppy Bank and the SBA.

30. Prithvi LLC needs to use cash collateral immediately to be able to pay critical and necessary expenses of its operations including payroll, operation expenses, utilities, insurance, and the projected professional costs of this Case. Payment of these expenses is critical for Hansaben LLC to continue its operations and reorganize its business in accordance with the requirements of the United States Bankruptcy Code.

31. The cash collateral motion will offer Poppy Bank and the SBA immediate replacement liens in cash collateral to the same extent, validity, scope, and priority as the prepetition liens held by Poppy Bank and the SBA, respectively, on the Petition Date.

32. In my years of experience in the operation of this Hotel and other hotels, the inability to have access to funds for several weeks, and especially not to pay employees, would have a devasting and negative impact on the business, which would irreparably the harm the creditors and the reorganization prospects for the Debtor in Possession.

33. The cash collateral motion seeks authority to use cash collateral of both Poppy Bank and the SBA as provided in the budget attached as Exhibit A to this declaration (the "Budget").

34. The Budget includes several weeks during which only the essential expense are paid. After the emergency/interim period, the Motion seeks final approval of the interim/emergency expenditures, and expenditures on a final basis through September 30, 2022.

**III.**

**FACTS REGARDING DEBTOR IN POSSESSION'S EMERGENCY MOTION FOR AUTHORITY TO PAY PREPETITION WAGES, COMPENSATION**

35. As a result of the bankruptcy filing, I understand that Prithvi LLC will be prohibited from paying or otherwise satisfying its pre-petition obligations to its employees as of the Petition Date (the "Employees" or "Employee"), including its obligations under various wage, salary, and benefit programs including accrued vacation pay, employee deductions and employee expense reimbursements (the "Employee Obligations").

36. The Debtor in Possession pays employee's wages on a semi-monthly basis, on the 1st and 15th of each month. The Debtor funds the total payroll amounts to Abacus Payroll, Inc. prior to each payday, and Abacus issues payroll checks or direct deposits to the employees.

37. Abacus also calculates payroll-related taxes and other withholdings and forwards these amounts to corresponding taxing authorities. I also understand that deductions such as garnishments, support payments and as well as withholdings on account of various federal, state and local income, FICA, Medicare and other taxes (collectively, "Employee Deductions") are funds in our possession that do not belong to the Debtor in Possession but belong to the employees.

38. Finally, I also understand that Prithvi LLC will be prohibited from reimbursing its employees for certain business-related expenses (collectively, "Employee Expenses"). Collectively, the Employee Obligations, Employee Expenses, and Employee Deductions are hereafter referred to as the "Prepetition Employee Obligations."

39. To maintain Employee morale at this critical time, and to minimize the personal hardship the Employees would suffer if Prepetition Employee Obligations are not timely satisfied (including but not limited to prepetition amounts that will be due when the first post-Petition payroll is due on June 1, 2022), I respectfully seek the Court's authority for the Debtor in Possession to honor, in its discretion, the Prepetition Employee Obligations. All of the Prepetition Employee Obligations owed are well below the priority claim limitation provided by the Bankruptcy Code.

40. The cost of losing the Employees will outweigh the cost of honoring the Prepetition Employee Obligations. If obligations are not timely honored post-petition in the

- 8 -

ordinary course of the Debtor in Possession's business, Employees will suffer extreme hardship and may be unable to pay their daily living expenses. Likewise, it would be inequitable to require the Debtor in Possession's Employees to personally bear any business expenses that were incurred on behalf of Prithvi LLC with the expectation that they would be reimbursed. Finally, as I stated above, I believe that many will not return to work, which will cause an enormous burden on the Hotel operations.

41. The next payroll is due on June 1, 2022 and will be approximately $8,500 for wages and taxes/deductions and we estimated that 60% of that amount will be for the prepetition period. The Debtor in Possession has run a "ghost" payroll through May 24, 2022, and will be able to file a supplement detailing the first initial, last name, and prepetition amount due to each employee prior to the hearing on the First-Day Motions.

## IV.

### MOTION FOR ORDER AUTHORIZING CONTINUED USE OF PREPETITION BANK ACCOUNTS

42. The Debtor's prepetition bank is located at Wells Fargo, where it maintains the following account in the ordinary course of its business operations (the "Account"):

| Account No. | Type of Account | Purpose of Account |
| --- | --- | --- |
| Last four digits 4775 | Checking | Used of pay all operating expenses |

43. The Hotel's cash management system is connected with this Account, which is used to accept and process credit card receipts. As almost all of Debtor in Possession's revenue is received via customers' use of credit cards, it would be disruptive to Debtor's business to close the Account.

44. In addition, Prithvi LLC uses its Account to reconcile payments received and allows the Debtor to maintain control of and visibility into disbursements of the company, thereby efficiently monitoring the Debtor's transactions.

45. The Account is also used to fund Debtor's payroll, including the first post-petition payroll, for which Debtor seeks approval to pay.

46. It is not feasible for Debtor to open and fund a new account in time to fund its initial payroll.

47. Given the administrative delays often encountered by Debtors seeking to open new DIP accounts, Debtor's subsequent payrolls could be interrupted or delayed as well.

48. Additionally, it is impossible to predict how quickly the large corporations that provide the ACH and similar transfers will move to redirect payments. This step is outside the Debtor in Possession's control. Closing the account immediately would almost assuredly be a financial disaster and also cause irreparable harm to the creditors and the prospects for reorganization.

## V.
## MOTION FOR ORDER DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR POSTPETITION UTILITY SERVICES UNDER 11 U.S.C. § 366

49. The proposed "adequate assurance payment" to PGE is $6,500. This is amount is the estimated PG&E bill for each month on average for the period from the Petition Date through September 30, 2022. The Budget forecasts that this adequate assurance payment will be made (if one is requested by PG&E) during the week ending June 30, 2022. The box for that month shows $13,000 as being paid to PG&E that month, $6,500 of this is for adequate assurance payment, and $6,500 for the first post petition PG&E bill. I believe this is a reasonable adequate assurance payment based on the Budget showing sufficient funds to pay this bill each month during Chapter 11.

50. Hotel cannot operate without electrical service. Termination would cause immediate and irreparable harm to the Hotel operations and critical reorganization efforts.

51. Based on all my experiences in operating the Hotel and the other Patel Hotels, the relief requested in the First-Day Motions and the filing of this Case are all based on what I believe is in the best interest of the Hotel's business and all creditors and parties in interest.

52. On May 24, 2022, Prithvi LLC and Hansaben LLCs' counsel had a call with Poppy Bank's bankruptcy counsel. Counsel for Poppy Bank had no objection to a hearing on the First Day Motions on less than 72 hours notice, and requested specifically that the hearing be set on Friday,

- 10 -

OMNIBUS DECLARATION OF HITESH PATEL

May 27, 2022, because he would be on a plane on Tuesday, May 30, 2022. My understanding is that there is a good chance for an agreement to allow the emergency expenditures.

I declare under penalty of perjury that the foregoing facts are true and correct and that this declaration was executed on May 25, 2022, in San Francisco, California.

By: /s/ Hitesh Patel
Hitesh Patel, in his capacity as the President of Prithvi Investments, LLC, the Debtor in Possession

# EXHIBIT A

PRITHVI INVESTMENTS LLC

| | Forecast Week Ending 5/27/2022 | Forecast Week Ending 6/3/2022 | Forecast Week Ending 6/10/2022 | Forecast Week Ending 6/17/2022 | Forecast Week Ending 6/24/2022 | Forecast 6 Days Ending 6/30/2022 | Forecast Month Ending 7/31/2022 | Forecast Month Ending 8/31/2022 | Forecast Month Ending 9/30/2022 |
|---|---|---|---|---|---|---|---|---|---|
| **Assumptions:** | | | | | | | | | |
| Total Rooms in Hotel available/night | 64 | 64 | 64 | 64 | 64 | 64 | 64 | 64 | 64 |
| Days available | 4 | 7 | 7 | 7 | 7 | 6 | 31 | 31 | 30 |
| Rooms Available in Hotel (rooms x days) | 256 | 448 | 448 | 448 | 448 | 384 | 1984 | 1984 | 1920 |
| Expected Occupancy % | 75% | 65% | 65% | 70% | 70% | 70% | 70% | 70% | 65% |
| # of Rooms rented (Total rooms available x occupancy %) | 192 | 291.2 | 291.2 | 313.6 | 313.6 | 268.8 | 1388.8 | 1388.8 | 1248 |
| Average Price per Room/night | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 |
| **Cash Receipts** | | | | | | | | | |
| Room Income (net of taxes and fees) | $ 21,120 | $ 32,032 | $ 32,032 | $ 34,496 | $ 34,496 | $ 29,568 | $ 152,768 | $ 152,768 | $ 137,280 |
| **Total Cash Receipts** | $ 21,120 | $ 32,032 | $ 32,032 | $ 34,496 | $ 34,496 | $ 29,568 | $ 152,768 | $ 152,768 | $ 137,280 |
| **Cash Disbursements** | | | | | | | | | |
| **Payroll & related** | | | | | | | | | |
| Wages & Taxes | - | 8,500 | - | 8,500 | - | - | 30,000 | 30,000 | 30,000 |
| Payroll Processing Expense | | 300 | - | 300 | - | - | 300 | 300 | 300 |
| Total Payroll & Related | - | 8,800 | - | 8,800 | - | - | 30,300 | 30,300 | 30,300 |
| **Operation Disbursements** | | | | | | | | | |
| Conteninatal Brkfst/Evening Reception | 500 | 750 | 750 | 750 | 750 | 750 | 6,000 | 6,000 | 6,000 |
| Guest/Operating Supplies /Laundry Supplies | - | 350 | 350 | 350 | 350 | 350 | 3,000 | 3,000 | 3,000 |
| Uniforms/Linen replacements | - | - | - | - | - | 600 | 600 | 600 | 600 |
| Newspapers | 40 | 63 | 63 | 63 | 63 | 250 | 500 | 500 | 500 |
| Fire Alarm System | - | - | - | 280 | - | - | 500 | 500 | 500 |
| Decorations/Plants & Grounds | - | - | - | - | - | 150 | 400 | 400 | 400 |
| Pest Services | - | - | - | - | - | 335 | 500 | 500 | 500 |
| Trash & Recycling Services | - | - | - | - | - | 1,200 | 1,000 | 1,000 | 1,000 |
| Water | - | 500 | - | - | - | - | 1,000 | 1,000 | 1,000 |
| Phones | - | - | - | - | - | 1,300 | 1,300 | 1,300 | 1,300 |
| Cable/Satellite | - | - | - | - | - | 2,000 | 2,000 | 2,000 | 2,000 |
| Energy/Utilities | - | - | - | - | - | 13,000 | 6,500 | 6,500 | 6,500 |
| Franchise Fees 9% | - | - | - | - | - | 16,537 | 13,749 | 13,749 | 12,355 |
| Merchant Fee | 739 | 1,121 | 1,121 | 1,207 | 1,207 | 1,035 | 5,347 | 5,347 | 4,805 |
| Computer Maintenance | - | - | - | - | - | 200 | 200 | 200 | 200 |
| | 1,279 | 2,784 | 2,284 | 2,650 | 2,370 | 37,707 | 42,596 | 42,596 | 40,660 |
| **Annual and Semi-Annual bills - accrued for large payments** | | | | | | | | | |
| Workers Compensation | - | - | - | - | - | 1,700 | 1,700 | 1,700 | 1,700 |
| Property Taxes | - | - | - | - | - | 11,000 | 11,000 | 11,000 | 11,000 |

| | Forecast Week Ending 5/27/2022 | Forecast Week Ending 6/3/2022 | Forecast Week Ending 6/10/2022 | Forecast Week Ending 6/17/2022 | Forecast Week Ending 6/24/2022 | Forecast 6 Days Ending 6/30/2022 | Forecast Month Ending 7/31/2022 | Forecast Month Ending 8/31/2022 | Forecast Month Ending 9/30/2022 |
|---|---:|---:|---:|---:|---:|---:|---:|---:|---:|
| Insurance - Umbrella | - | - | - | - | - | 2,500 | 2,500 | 2,500 | 2,500 |
|  | - | - | - | - | - | 15,200 | 15,200 | 15,200 | 15,200 |
| **Subtotal Operational Disbursements** | $ 1,279 | $ 11,584 | $ 2,284 | $ 11,450 | $ 2,370 | $ 52,907 | $ 88,096 | $ 88,096 | $ 86,160 |
| **Financing & Professional Fees:** | | | | | | | | | |
| Poppy Bank Loan Proposed Adequate Protection Payment | - | - | - | - | - | - | 20,000 | 20,000 | 20,000 |
| Access Point Financial Loan | - | - | - | - | - | - | | | |
| NFS Leasing Loan | - | - | - | - | - | - | 16,286 | 16,286 | 16,286 |
| SBA Loan | - | - | - | - | - | - | | | |
| Debtor Attorneys | - | - | - | - | - | - | 20,000 | 20,000 | 20,000 |
| Debtor CPA | - | - | - | - | - | - | 5,000 | 15,000 | 5,000 |
| Plan Experts | - | - | - | - | - | - | 15,000 | 10,000 | |
| Sub total Financing & Professional Fees: | - | - | - | - | - | - | 76,286 | 81,286 | 61,286 |
| **Total Cash Disbursements** | $ 1,279 | $ 11,584 | $ 2,284 | $ 11,450 | $ 2,370 | $ 52,907 | $ 164,382 | $ 169,382 | $ 147,446 |
| **Net Cash Flow** | $ 19,841 | $ 20,448 | $ 29,748 | $ 23,046 | $ 32,126 | $ (23,339) | $ (11,614) | $ (16,614) | $ (10,166) |
| **Cummulative Cash Flow** | $ 19,841 | $ 40,289 | $ 70,037 | $ 93,083 | $ 125,208 | $ 101,870 | $ 90,256 | $ 73,642 | $ 63,476 |

Note: Revenue from rooms is net from taxes and fees collected and pass to authorities.