Mitchell B. Greenberg, Esq. (SBN 114878)
mgreenberg@abbeylaw.com
**ABBEY, WEITZENBERG, WARREN & EMERY, P.C.**
100 Stony Point Road, Suite 200
Santa Rosa, CA 95401
Telephone: 707-542-5050
Facsimile: 707-542-2589

Attorneys for Secured Creditor
POPPY BANK, fka First Community Bank

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| In re:<br><br>PRITHVI INVESTMENTS LLC, a California Limited Liability Company,<br><br>Debtor. | Case No.   22-30259 DM<br><br>Chapter 11<br><br>**POPPY BANK PRELIMINARY RESPONSE TO DEBTOR'S TERM SHEET OUTLINE IN SUPPORT OF ITS MOTION FOR RELIEF FROM STAY**<br><br>**Date: July 21, 2022**<br>**Time: 9:30 a.m.**<br>**Dept.: Hon. Dennis Montali**<br><br>*Hon. Dennis Montali* |

Debtor Prithvi Investments LLC filed its Debtor In Possession's Statement Regarding the Term Sheet Outline on July 18, 2022 (Docket # 78). This "Term Sheet" was filed in accordance with this Court's order following the first preliminary hearing on Poppy Bank's Motion for Relief from Stay. It is clear from this Term Sheet that Debtor will be proposing a "hold and wait" plan which shifts all the risk to Poppy Bank of continued financial decline. Moreover, the plan is a negative amortization plan, which does not comply with the high standard set forth by the Ninth Circuit for confirmation of negative amortization plans. See *Great Western Bank v. Sierra Woods Group* 953 F.2d 1174, 1176 (9th Cir. 1992). Nor is there any reasonable likelihood of Debtor prevailing at the conclusion of a Final Hearing on the Bank's motion for the additional reason that Debtor is unlikely to obtain the affirmative vote of one impaired class of claims if somehow Debtor

1

ABBEY, WEITZENBERG, WARREN & EMERY P.C.
100 Stony Point Road, Suite 200, Santa Rosa, CA 95401
Telephone: (707) 542-5050  Facsimile (707) 542-2589

ABBEY, WEITZENBERG, WARREN & EMERY P.C.
100 Stony Point Road, Suite 200, Santa Rosa, CA 95401
Telephone: (707) 542-5050  Facsimile (707) 542-2589

1  could obtain approval of a disclosure statement because Poppy Bank controls the unsecured class

2  of claims on its second loan. 11 U.S.C. Sec. 362(e)(1). Debtor simply has failed to meet its burden

3  of proof to negate cause for relief from stay or show a reasonable prospect of confirmation of a

4  plan in a reasonable time, and the Court should grant relief from stay at this second preliminary

5  hearing.  If it will not do so, the Court should set a final hearing on relief from stay for late August,

6  2022.

7       As noted, Debtor proposes a negative amortization plan, that is,  '"a provision wherein part

8  or all of the interest on a secured claim is not paid currently but instead is deferred or allowed to

9  accrue,' with the accrued interest added to the principal and paid when the income is higher."

10  *Great Western Bank, supra*, 953 F.2d at 1176 (citation omitted).  Here, Debtor proposes that, upon

11  the Effective Date of a confirmed plan, the interest rate of the first Poppy loan will be 5% per

12  annum, and for the second loan, either 5% per annum or the Federal Judgment Rate (depending on

13  whether the plan is consensual or not), which is currently 2.86%. The non-default contract interest

14  rate for both of the Poppy loans was 7% per annum, and the default rate of interest, invoked

15  prepetition, is 12% per annum.  Thus, the Term Sheet clearly proposes a negative amortization

16  plan, with absolutely no provision for what becomes of the deferred interest.

17       Under *Great Western Bank v. Sierra*, whether a negative amortization plan is fair and

18  equitable to a dissenting creditor as required by Bankruptcy Code section 1129(b) is determined

19  on a case-by-case basis.  The Term Sheet satisfies none of the relevant factors, which include:

20

21       1.      Does the plan offer a market rate of interest? -  5% is not a market rate of interest

22  on this troubled motel.  There is significant deferred maintenance, which was identified by

23  Poppy Bank's appraiser who highlighted that the property received a "fail" score in the quality

24  assurance report from the franchisor (Docket #61, p. 3, para. 7).  The weekly occupancy &

25  revenue reports from Debtor for the period June 24-July 14 (attached herein as Exhibit A,

26  provided in compliance with the Cash Collateral Order - Docket #69, para. 11) show an average

27  of 24% of the total rooms "Out of Order" during this 3 week period.  These reports also show

28

ABBEY, WEITZENBERG, WARREN & EMERY P.C.
100 Stony Point Road, Suite 200, Santa Rosa, CA 95401
Telephone: (707) 542-5050  Facsimile (707) 542-2589

gross revenue, when annualized, of approximately $1,500,000.[1]  That gross revenue number is only slightly above the $1,213,000 for 2020 and approximately the same as the $1,535,000 revenue number for 2021 (Docket #51, p. 1).  Given that default interest as a matter of law is enforceable, see, *In re New Invs. Inc.*, 840 F.3d 1137 (9th Cir. 2016)(overruling *Entz-White* and holding that a debtor must pay default interest as a condition to a cure under Section 1123(b) of the Code), every month the Bank is stayed from foreclosure, there is a monthly shortfall in excess of $50,000.[2]

2.      Is the amount and length of the proposed deferral reasonable? - a hold and wait plan without adequate accruals to keep senior taxes current, let alone fund a secured tax repayment plan while the Bank debt increases substantially is not a reasonable deferral.  Debtor is "reserving" $11,000/month for property taxes (Docket #45, Exh. 1, p. 1), but the actual current property taxes total $31,000/month, which does not even take into account the 18% per annum interest on the accrued unpaid taxes of $769,825 (number valid as of 6/30/2022 per County Tax Collector).  The Term Sheet does not address this issue.

3.      Is the ratio of debt to value satisfactory throughout the plan? - The loan to value ratio is unsatisfactory.  The Bank debt and senior taxes (at 18%) are growing, and there is no evidence the value of the property is increasing.  On the contrary, the Debtor's numbers post-petition suggest exactly the opposite.

4.      Are the debtor's financial projections reasonable and sufficiently proven, or is the plan feasible? - The Debtor has not even met its projections for the first time period for which we have data to compare to the projections, that is, the last week of June, 2022.  Debtor estimates 384 rooms available for rent during that one-week period, but in fact there were only 310 rooms available, and the revenue fell short by almost 20% (Docket #45, p. 5 & Exh. A hereto).

---

[1] Debtor has acknowledged that the summer is the high season, so annualizing on a sample which includes only the high season summer is overly generous to Debtor.

[2] That number is derived taking the default interest on the fully secured first and the non-default interest on the partially secured second, and the delta between those numbers and the 5% interest rate proposed.

POPPY BANK'S RESPONSE TO DEBTOR'S TERM SHEET

ABBEY, WEITZENBERG, WARREN & EMERY P.C.
100 Stony Point Road, Suite 200, Santa Rosa, CA 95401
Telephone: (707) 542-5050 Facsimile (707) 542-2589

5.      What is the nature of the collateral, and is the value of the collateral appreciating, depreciating or stable? - The value of the collateral is not stable, and the fact that the Debtor has no money to address the significant percentage of off-line rooms, coupled with the absence of funds for capital improvements suggests that the value is declining.   Certainly the value of the Bank's interest in the collateral will decline because of the negative amortization and accrual of senior tax debt.

6.      Are the risks unduly shifted to the secured creditor/ Are the risks borne by one secured creditor or class of secured creditors? - All risks of loss are improperly borne by the Bank.  The Bank has the principal protectible interest in the asset.  The Debtor's sponsors are out of the money and bear no risk of continued value decline.

7.      Does the plan preclude the secured creditor's foreclosure? – The Term Sheet is silent regarding the Bank's foreclosure rights, which are stayed currently, and obviously, Debtor intends that the Bank will continue to be held at bay from enforcing its remedies.

8.      Did the original loan terms provide for negative amortization? – The Bank's loan documents do not provide for negative amortization.

9.      Are there adequate safeguards to protect the secured creditor against failure? - There are no safeguards to protect the Bank during the "hold and wait" period.   Letting the Bank "recommend" a listing broker is not a safeguard against the economic detriment to the Bank created by the plan.  Nor are there any provisions in the Term Sheet for the Bank's remedy in the event of Debtor's failure to comply with the terms of any confirmed plan.

     Debtor has fallen woefully short of its burden of establishing a reasonable likelihood of prevailing at a Final Hearing.  The only valuation evidence before the Court is Poppy Bank's appraised value of $9,417,125, as against the Bank's outstanding principal and interest balance as of the petition date of $11,800,137.  That number will only increase significantly if the Bank must wait until some hypothetical sale effort starting in September 2023, while the property, which is clearly in serious need of significant cash infusion to address deferred maintenance and upgrades to satisfy its franchisor, declines.  The Bank should not be required to shoulder all this risk while the Debtor has the benefit and prayer that a $9 Million property will somehow

4

ABBEY, WEITZENBERG, WARREN & EMERY P.C.
100 Stony Point Road, Suite 200, Santa Rosa, CA 95401
Telephone: (707) 542-5050  Facsimile (707) 542-2589

1  transform between now and September 2023 into a property sufficient to pay the Bank, the

2  $769,825 property taxes, and have money left over to propose some payment to the unsecured

3  creditors.

4  Dated:  July 20, 2022                    ABBEY, WEITZENBERG, WARREN & EMERY, P.C.

5

6

7                                    By:  /S/ MITCHELL B. GREENBERG
                                          Mitchell B. Greenberg, Esq.
                                          Attorneys for Secured Creditor
8                                         POPPY BANK, fka First Community Bank

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

# EXHIBIT A

# Quality Inn & Suites
Week Ending: June 30, 2022

| | 6/24/22 | 6/25/22 | 6/26/22 | 6/27/22 | 6/28/22 | 6/29/22 | 6/30/22 | Weekly |
|---|---|---|---|---|---|---|---|---|
| Total Rooms | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 455 |
| Out of Order Rooms | 19 | 19 | 19 | 19 | 30 | 29 | 10 | 145 |
| Total Available Rooms | 46 | 46 | 46 | 46 | 35 | 36 | 55 | 310 |
| Rooms Rented | 32 | 43 | 11 | 27 | 35 | 20 | 20 | 188 |
| % Occupancy | 70% | 93% | 24% | 59% | 100% | 56% | 36% | 61% |
| Total Revenue | $ 5,006.58 | $ 7,352.26 | $ 1,323.52 | $ 3,037.40 | $ 3,689.54 | $ 2,104.14 | $ 1,987.89 | $ 24,501.33 |
| Average Room Rate | $ 156.46 | $ 170.98 | $ 120.32 | $ 112.50 | $ 105.42 | $ 105.21 | $ 99.39 | $ 130.33 |

# Quality Inn & Suites
Week Ending:  July 7, 2022

| | 7/1/22 | 7/2/22 | 7/3/22 | 7/4/22 | 7/5/22 | 7/6/22 | 7/7/22 | Weekly |
|---|---|---|---|---|---|---|---|---|
| Total Rooms | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 455 |
| Out of Order Rooms | 10 | 16 | 11 | 10 | 10 | 16 | 25 | 98 |
| Total Available Rooms | 55 | 49 | 54 | 55 | 55 | 49 | 40 | 357 |
| Rooms Rented | 36 | 43 | 28 | 17 | 34 | 49 | 40 | 247 |
| % Occupancy | 65% | 88% | 52% | 31% | 62% | 100% | 100% | 69% |
| Total Revenue | $ 4,788.25 | $ 6,498.77 | $ 2,989.86 | $ 1,747.74 | $ 3,291.41 | $ 4,831.31 | $ 3,950.01 | $ 28,097.35 |
| Average Room Rate | $    133.01 | $    151.13 | $    106.78 | $    102.81 | $    96.81 | $    98.60 | $    98.75 | $    113.75 |

# Quality Inn & Suites
Week Ending: July 14, 2022

| | 7/8/22 | 7/9/22 | 7/10/22 | 7/11/22 | 7/12/22 | 7/13/22 | 7/14/22 | Weekly |
|---|---|---|---|---|---|---|---|---|
| Total Rooms | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 455 |
| Out of Order Rooms | 14 | 14 | 15 | 14 | 11 | 12 | 14 | 94 |
| Total Available Rooms | 51 | 51 | 50 | 51 | 54 | 53 | 51 | 361 |
| Rooms Rented | 45 | 50 | 45 | 49 | 49 | 51 | 51 | 340 |
| % Occupancy | 88% | 98% | 90% | 96% | 91% | 96% | 100% | 94% |
| Total Revenue | $ 5,429.26 | $ 6,703.51 | $ 4,215.66 | $ 4,552.76 | $ 4,716.48 | $ 4,922.04 | $ 4,968.02 | $ 35,507.73 |
| Average Room Rate | $ 120.65 | $ 134.07 | $ 93.68 | $ 92.91 | $ 96.25 | $ 96.51 | $ 97.41 | $ 104.43 |